**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA ex rel.** | ) | |
| **NATHANIEL BROWN (B-65324),** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 05 C 2609** |
| | ) | |
| **NEDRA CHANDLER, WARDEN** | ) | **Judge Rebecca R. Pallmeyer** |
| **DIXON CORRECTIONAL CENTER,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION AND ORDER

In December 1994, Petitioner Nathaniel Brown was convicted by a jury of four counts of criminal sexual assault. The trial court, Judge Kipperman, sentenced Brown to two five-year terms for criminal sexual assault to run concurrently with two consecutive fifteen-year terms for aggravated criminal sexual assault. Brown filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in 2005, and supplemented it with an amended petition in 2009. Brown claims that there were numerous errors in the grand jury proceedings and further errors on the part of trial counsel and the trial court judge, rendering his confinement invalid. The court stayed habeas proceedings in 2005 to permit petitioner to pursue his state post-conviction appeal, but, despite Petitioner's efforts to exhaust his state court remedies, no resolution had been reached six years later. Given this delay, the court deemed Brown's state remedies exhausted in 2011, and now proceeds to the merits of his petition. Though Brown won that battle, he loses the war: for the reasons explained here, the court denies both the original [1] and supplemental [46] petitions, and declines to grant a certificate of appealability.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Trial

On habeas review, the court presumes the facts as found by the state court correct, absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). The following

facts are drawn from the Illinois Appellate Court's order affirming Brown's conviction on direct appeal. (*Illinois v. Brown*, 288 Ill. App. 3d 1098, 711 N.E.2d 822, Order of the Ill. App. Ct., 1st Dist., June 2, 1997, hereinafter "Ill. App. Ct. Order," Ex. A to St. Ct. R. [72].)

Petitioner was charged with two counts of aggravated criminal sexual assault and two counts of criminal sexual assault stemming from four different instances in which he assaulted a friend of his stepdaughter. (*Id.* at 1.) The first of the four acts occurred in September 1992, the second just before the victim's thirteenth birthday (which was October 21, 1992), the third in December 1992, and the fourth in January 1993. (*Id.* at 2.) At all relevant times, Brown was age 47. (Def.-Appellant's Br., Ex. B to St. Ct. R., at 16.) ("[Petitioner's] date of birth was February 12, 1945 . . . .") Throughout this period, the victim was living in the Westchester, Illinois home that Brown shared with his stepdaughter, his wife (Cathy Brown), and two children from the Browns' marriage. (*Id.* at 1-2.) Each of the four attacks followed a similar pattern:

> [The complainant] awoke in the early morning hours to find defendant on top of her . . . She stated that she could not breathe because defendant was crushing her. Her underwear was off and her legs were pried open and pinned down by defendant's knees. Defendant had complainant's arms over her head with one hand and he inserted the fingers of his other hand in her vagina. He then penetrated her vagina with his penis. When defendant was finished he stood up, put on his underwear and left the room without saying a word. The complainant knew he had ejaculated because there was a white substance on her bed and on her leg near her vagina. After he left the room, she got up, turned on the light, locked the door and started crying.

(*Id.* at 2.) The victim testified that she told three of her schoolmates about the assaults: Kevin Anderson, Ann Morgan, and Elizabeth Doanes (Petitioner's stepdaughter). (*Id.* at 3.) Anderson and Morgan corroborated the victim's testimony, testifying that the victim told them about the rapes in November 1992 and April 1993, respectively. (*Id.*) Doanes, however, denied being told about the attacks. (*Id.*) The State called Sandra Conrath, a retired teacher, and Sam Pulia, a police sergeant, to impeach Doanes's credibility. Contrary to Doanes's testimony that she had never herself been assaulted by Brown, Conrath, and Pulia testified that, in 1989, Doanes had complained to Conrath that Brown was "touching her and doing things to her," and

had told Pulia that she had been sexually assaulted by Petitioner. (*Id.*) In addition to Doanes, Brown also called his daughter from a prior relationship, his wife, and a police officer, Sergeant Lisuzzo as witnesses in his case in chief. (*Id.* at 3-4.)

A jury found Brown guilty on all four counts: two counts of aggravated criminal sexual assault, for the episodes before the victim's thirteenth birthday, and two counts of criminal sexual assault, for the episodes after she turned 13. Brown was subsequently sentenced to two five-year terms of imprisonment for criminal sexual assault to run concurrently with two consecutive fifteen-year terms for aggravated criminal sexual assault. (*Id.* at 1.)

## II.    Direct Appeal

Petitioner appealed, raising nine issues, all of which the appellate court rejected in affirming Brown's conviction. Petitioner, who was represented by counsel, claimed that: (1) the trial court erred in admitting testimony corroborating the victim's complaint of rape; (2) the trial court erred in excluding testimony regarding the victim's sexual activity; (3) the trial court erred in allowing the cross examination of Doanes regarding her own allegations, made in 1989, that Brown had sexually assaulted her; (4) certain testimony by Conrath and Sergeant Pulia relating to the victim's allegations of sexual assault should have been excluded as unduly prejudicial; (5) Petitioner was prejudiced because the judge had to be reminded to give a limiting instruction concerning certain rebuttal testimony; (6) the State made improper closing argument; (7) the evidence did not conform to the bill of particulars; (8) the evidence was insufficient to support the conviction; and (9) the judge committed various prejudicial errors. (Def.-Appellant's Br., Ex. B to St. Ct. R.) Petitioner later filed a petition for leave to appeal ("PLA") before the Supreme Court of Illinois, arguing that his counsel at trial and on appeal represented him "inadequate[ly] and incompetent[ly]." (Pet. for Leave to Appeal, Ex. D to St. Ct. R.) Leave to appeal was denied on October 1, 1997. (*Id.*)

## III.    State Post-Conviction Proceedings

Brown filed a *pro se* petition for post-conviction relief, raising seventeen issues, on

3

March 30, 1998.  (Post-Conviction Pet., Ex. F to St. Ct. R.)  On April 27, 1998, he filed an amended petition raising three additional issues.  (Am. Mot. for Post-Conviction Relief, Ex. G to St. Ct. R.)  On May 8, 1998, the trial court denied both petitions, which sought relief under the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.*  (*People v. Brown*, No. 98 CR 1960, Post-Conviction Order of the Ill. App. Ct., 1st Dist., 2001, hereinafter "Post-Conviction Order of the Ill. App. Ct.," Ex. E to St. Ct. R., at 2.)  Petitioner again appealed, this time alleging that (1) his consecutive sentences were improper under *Apprendi v. New Jersey*, 530 U.S. 466 (2000); and (2) the post-conviction trial court erred in dismissing Brown's allegation of ineffective assistance of counsel (both at trial and on appeal) as "frivolous and patently without merit." (Pet.'s Post-Conviction App. Br., Ex. H to St. Ct. R.)  In 2001, the appellate court reversed and remanded, finding that Petitioner "was entitled to an evidentiary hearing with regard to his allegations of ineffective assistance of counsel during trial . . . where trial counsel failed to call several witnesses whom petitioner claims could have provided testimony which would show that the victim was lying."  (Post-Conviction Order of the Ill. App. Ct. at 6.)

It appears that hearing has never taken place.  On remand from the appellate court's ruling, Petitioner was initially represented by private counsel.  The State moved to dismiss the petition as untimely, and the post-conviction trial court granted the motion.  On appeal, however, the State conceded, and the court agreed, that the post-conviction trial court had erred in finding the petition untimely on remand, as it was filed within time limit of three years from the date of Brown's conviction.[1]  (*People v. Brown*, No. 1-03-1185, Second-Stage Post-Conviction Order of

---

[1]     At the time, Illinois law required the petition be filed by the earlier of two dates: (1) within six months of the denial of a PLA, or (2) within three years of the date of conviction. 725 ILCS 5/122-1(c) (1989) (amended 1995).  In Brown's case, six months after the October 1, 1997 denial of his PLA was April 1, 1998, and March 29, 1998 was three years from the date of his conviction.  As the March date was earlier, it was the deadline for Brown's petition; however, Petitioner did not file until the following day: March 30, 1998.  This was a timely filing, however, as March 29, 1998 fell on a Sunday and was, therefore, excluded from the computation of time. *See* 5 ILCS 70/1.11 ("The time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is Saturday or

(continued . . .)

the Ill. App. Ct., 1st Dist., Sept. 2, 2005, hereinafter "Second-Stage Post-Conviction Order of the Ill. App. Ct.," Ex. L to St. Ct. R., at 3.) Accordingly, the appellate court reversed and remanded for "new second-stage proceedings on defendant's petition." (*Id.*) After it was determined that Petitioner would not be represented by retained counsel on remand, the court appointed a public defender on March 2, 2007, but Petitioner dismissed his court-appointed counsel on November 2, 2007 and proceeded *pro se.* (*People v. Brown*, Nos. 1-08-0682, 1-08-2619, & 1-08-2622 (Ill. App. 1st Dist. 2011), Ex. Z to St. Ct. R., at 4.) Petitioner subsequently filed another amended post-conviction petition on December 11, 2007 alleging, among other things, ineffective assistance of trial and appellate counsel (*id.*), as well as numerous other motions[2], all of which were denied. Petitioner appealed the dismissal of these motions, but his appeal was dismissed for lack of prosecution on October 7, 2008 due to Brown's failure to file the record on appeal within the time prescribed by Illinois law. (*People v. Brown*, No. 08-683 (Ill. App. Ct. 1st Dist. Oct. 7, 2008), Ex. AA to St. Ct. R., at 1.)

Meantime, while appeal from the motion rulings was pending, on May 9, 2008, the State moved to dismiss Brown's post-conviction petition (aggregating the claims from his petitions filed in 1998 and 2007). On August 22, 2008, the trial court granted that motion, dismissing the petition due to Petitioner's failure to make a substantial showing of a violation of his constitutional rights. (*People v. Brown*, Nos. 1-08-0682, 1-08-2619, & 1-08-2622 (Ill. App. 1st Dist. 2011), Ex. Z to St. Ct. R., at 4-5.) The appellate court reversed and, for the third time, remanded for an evidentiary hearing on Petitioner's ineffective assistance of counsel claim. (*Id.*

---

Sunday . . . and then it shall also be excluded.").

[2]     Petitioner filed a "motion to recuse the trial judge," a "motion for a copy of court order," a "motion for entry of default judgment against the People of the State of Illinois," a "motion to vacate the court's order," and a "motion for judgment on undisputed facts of *pro se* pleadings." (Certified Statement of Conviction/Disposition, *People v. Brown*, No. 83 CR 10870, Ex. T to St. Ct. R., at 12.)

at 10.)  But because Brown had already filed a motion for leave to file a late PLA,[3] the trial court

had no jurisdiction to proceed and the appellate court recalled its remand order.  The Illinois

Supreme Court denied Petitioner's motion on March 29, 2011.[4]  (Resp.'s Answer at 7.)

Brown also filed several additional *pro se* pleadings in the years between the appellate

court's 2001 ruling first remanding his post-conviction petition to the trial court and the second

remand order in 2005.  In 2003, Petitioner filed a *pro se* "motion to vacate the judgment and

sentence," as well as a "motion to vacate mandatory consecutive sentences."  (*People v.

Brown*, No. 1-03-3198, Order of the Ill. App. Ct., 1st Dist., Sept. 9, 2005, Ex. Q to St. Ct. R.,

at 1.)  The circuit court "construed [both filings] as petitions for relief under the Post-Conviction

Hearing Act . . . and dismissed [them] as frivolous and patently without merit."  (*Id.*)  Petitioner

appealed, arguing that his concurrent five-year sentences were improper, as they arose from

the same physical act as his convictions for aggravated criminal sexual assault.  The appellate

court affirmed based on Brown's failure to provide a record adequate to assess his claim

(specifically, the court could not determine whether Petitioner had raised his claim before the

trial court).  (*Id.* at 5.)  In 2005 and 2006, Petitioner also filed, *pro se*, a petition for mandamus[5]

(which was denied for lack of jurisdiction), an amended post-conviction petition, a "petition for

relief of void judgment," and a "motion for production of medical record."  (*People v. Brown*, No.

93 CR 10870, Certified Statement of Conviction/Disposition, Ex. T to St. Ct. R., at 8-9)  In

response, on October 2, 2006, the State moved to strike these *pro se* filings on the ground that

Petitioner was represented by counsel.  The court granted that motion on November 16, 2006,

---

[3]     Neither party has provided a copy of Petitioner's PLA, nor is the court certain why Petitioner sought to appeal from a decision in which he effectively prevailed.

[4]     Respondent contacted the Illinois Supreme Court on July 6, 2011 to inquire about Petitioner's pending motion for leave to file a late PLA.  The Clerk's Office informed Respondent at that time that Petitioner's motion had been denied.  (Resp.'s Answer at 6-7.)

[5]     The parties do not indicate (nor does the record) what action Petitioner sought in his failed mandamus petition.

holding that Petitioner was precluded from filing *pro se* pleadings while still represented by counsel. (*Id.*) Petitioner again appealed, arguing that "the trial court erred in denying the [*pro se*] motions on the singular basis that defendant had appointed counsel representing him in a separate post-conviction proceeding." (*People v. Brown*, No. 1-07-082, Order of the Ill. App. Ct., 1st Dist., Sept. 18, 2008, Ex. V to St. Ct. R., at 1.) The appellate court agreed, and reversed and remanded with instructions that Brown be granted leave to file his petitions. (*Id.* at 6-7.) On remand, the trial court denied the petition on October 22, 2010, and Petitioner again appealed. That appeal was still pending as of the last filing in the instant case (*People v. Brown*, No. 1-10-3478, Order of the Ill. App. Ct., 1st Dist., June 21, 2011, Ex. EE to St. Ct. R., at 1), but the appellate court later affirmed the trial court decision on December 13, 2012.[6]

## IV.    State Habeas Petition

In addition to the post-conviction litigation described above, Petitioner has attempted to avail himself of state habeas relief. He filed a combined motion for relief from judgment pursuant to 725 ILCS 5/2-1401 and a state habeas corpus complaint pursuant to 735 ILCS 5/10-101, *et seq*, on July 29, 2002. Brown relied on four arguments in the combined motion: (1) counts one and three of the indictment "om[]itted one of the necessary element[s] of the statutory criminal offense, to which, the petitioner was charged and convicted" (i.e., force); (2) his consecutive terms of imprisonment violate *Apprendi*; (3) the trial court lacked jurisdiction because count three of the indictment was "void and defective" for alleging an act that does not constitute an element of the offense (specifically, Brown argued that "fingers penetration" does not fall under the statutory criminal definition of "any intrusion, however slight of any . . . object into the sex organ or anus of another person"); and (4) there was no evidence presented at trial that showed that any incident occurred "during the month of 'October'" or that any "fingers

---

[6]       This court contacted the Clerk for the Illinois Appellate Court, First District on November 26, 2013. The Clerk reported that the appellate court had affirmed the trial court's denial of Brown's petition in a summary order dated December 13, 2012.

penetration" had occurred, as alleged in the indictment. (Pet.'s Petition for Writ of Habeas Corpus, and or Relief from Judgment, Instanter, Ex. BB to St. Ct. R.) The State filed a motion to dismiss on the ground that none of Brown's claims were cognizable under Illinois' habeas statute. Alternatively, the State argued, Petitioner's combined motion might be construed as a petition for relief pursuant to section 2-1401 of the Code of Civil Procedure, 735 ILCS 5/2-1401; as so construed, it would fail because it was not filed within two years of the judgment, nor in the same proceeding as that judgment, both requirements for relief under section 2-1401. (St.'s Mot. to Dismiss, Ex. T to St. Ct. R.) The trial court agreed with the State, dismissing the petition on April 22, 2003. (Ex. O to St. Ct. R.; Ex. Q to St. Ct. R.) The trial court's decision was affirmed on appeal on December 19, 2003, and Petitioner's subsequent PLA was denied on May 26, 2004. (*Brown v. Leibach*, No. 97993, PLA, Ex. DD to St. Ct. R.; *Brown v. Leibach*, 813 N.E.2d 221 (Ill. 2004).)

**V.    Federal Habeas Petition**

Brown filed this petition pursuant to 28 U.S.C. § 2254 on April 28, 2005, and filed a supplemental petition on April 27, 2009. In Brown's first habeas petition [1], he asserted that his post-conviction efforts were still underway in state court. (Pet. at 1.d.) In the aggregate, these petitions raise ten different claims: (1) the counts charging Petitioner with aggravated criminal sexual assault (counts one and three) were "void" because they failed to include the element of force and did not identify the victim's age; (2) consecutive sentences were improper; (3) the state habeas court committed multiple errors; (4) the indictment was "defective" and "void" because it failed to properly allege "sexual penetration" as required by the relevant statute; (5) the state habeas court's dismissal of Brown's petition relied on "false and perjurious information" provided by the State in its motion to dismiss**;** (6) the grand jury proceedings were tainted by multiple errors; (7) the prosecution's trial evidence went beyond the scope of the bill of particulars; (8) the state trial judge committed numerous purposeful errors in aid of a conspiracy to convict Petitioner; (9) guilt was not proved beyond a reasonable doubt and Petitioner was

8

denied his right to "obtain witnesses in his favor"; and (10) counsel was ineffective for failure to raise claims (1) through (9)).  (Pet.; Supp. Pet. [46].)

On June 14, 2005, this court stayed habeas proceedings pending the completion of Petitioner's post-conviction appeal [11].  Over the next six years, the parties filed periodic reports on the status of Petitioner's post-conviction proceedings, but, despite Petitioner's efforts to exhaust his state court remedies, no resolution had been reached.  During a May 2, 2011 status hearing [65], Petitioner advised the court (through appointed counsel) that, although the state courts agreed he was entitled to a hearing on his claims, it could still take two to three years before such a hearing could take place.  This court concluded that the delays Brown faced were "extraordinary and unacceptable," and, if no hearing was held in state court within six weeks, Petitioner's claims would be deemed exhausted.  (Minute Order of 5/2/11 [65].)  No such hearing was held within six weeks, and, on June 9, 2011, this court concluded that Brown had exhausted his state court remedies, allowing the court to proceed to the merits of his § 2254 petition.[7]  (Minute Order of 6/9/11 [67].)  In its subsequent answer, Respondent argues that all of Petitioner's claims are meritless and, further, that claims one, two, three, five, and eight are non-cognizable; claims seven and nine are procedurally defaulted and Petitioner cannot excuse his defaults; and claim eight is insufficiently pleaded under Rule 2(c).  (Resp.'s Answer [71], at 9.)

## DISCUSSION

## I.    Standard of Review

Section 2254 of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") entitles a prisoner to a writ of habeas corpus if he is being held pursuant to a state court judgment obtained in violation of the United States Constitution.  28 U.S.C. § 2254.  For claims that were

---

[7]    As noted above, the Illinois Appellate Court affirmed the denial of Brown's post-conviction petition appeal on December 13, 2012, one-and-a-half years after this court's order deeming Petitioner's state court remedies exhausted due to delay.  The summary disposition of Brown's state post-conviction case does not alter this court's analysis.

adjudicated in state court, a federal court will not grant a writ of habeas corpus unless that state decision (1) was contrary to or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in that state court proceeding. 28 U.S.C. § 2254(d)(1), (2); *see Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011). Accordingly, "errors of state law in and of themselves are not cognizable on habeas review." *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004). Instead, a federal habeas court has power only to remedy "violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene." *Id.*

**III.    Petitioner's Claims**

Brown raises ten separate claims in his § 2254 petition, addressed in turn below.

**A.    Claim One**

Petitioner's first ground for relief is based on the contention that counts one and three of the indictment were "insufficient, faulty, defective, and void," because (1) they omitted the element of force (Pet. at 2); and (2) they did not identify the dates of the attacks. (Pet. at 13.) As a result, Brown argues, the indictments failed to apprise him of the nature of the charges against him and the trial court lacked subject matter jurisdiction; and, for these reasons, his convictions on these counts are void. (*Id.* at 2-24.)

**1.    "Force" Element**

As Respondent points out, Petitioner's claim regarding force "rests upon a false premise"; namely, that force was a necessary element of the crime with which Brown was charged. (Resp.'s Answer at 15.) In reality, at the time of Petitioner's indictment and conviction, the Illinois Criminal Code provided several different definitions of aggravated sexual assault,

only one of which required the element of force.[8]  *See* 38 ILCS ¶ 12-14 (1989) (amended 1995) (current version at 720 ILCS 5/11-1.30); *see also People v. Terrell*, 132 Ill. 2d 178, 216, 547 N.E.2d 145, 161 (Ill. 1989) (discussing the legislature's decision to punish an adult offender whose victim is very young more harshly than an adult offender whose victim is also an adult); *People v. Ramsey*, 190 Ill. App. 3d 723, 727, 546 N.E.2d 1108, 1111 (Ill. App. Ct. 5th Dist. 1989) ("[T]he legislature did not intend subsection (b) of the aggravated criminal sexual assault statute to be an enhanced offense of simple criminal sexual assault.  Instead, subsection 12-14(b) was intended to recodify certain sex offenses against children, not all of which required the use of force").

Petitioner Brown was indicted and convicted of aggravated criminal sexual assault under subsection (b)(1), because he assaulted a minor (Indictment, Count 1, Ex. A to Pet.; Indictment, Count 3, Ex. B to Pet.); that subsection does not require a showing of the use of force.  Rather it reaches adult offenders whose victims were young.  38 ILCS ¶ 12-14 (b)(1) ("[a] person commits aggravated criminal sexual assault if . . . the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed.")  Here, it is undisputed that Petitioner was 47 years of age at the time of all four incidents.  The only remaining issue relevant to this claim is the age of the victim at the time of the attacks (discussed below).

---

[8]     Petitioner's faulty assumption is based on two errors.  First, rather than looking to the subsection under which he was indicted (i.e., 38 ILCS ¶ 12-14(b)(1)), he focuses on 38 ILCS ¶ 12-14(b)(2)(ii), which did require force: "The accused commits aggravated criminal sexual assault if . . . the accused was under 17 years of age and . . . commits an act of sexual penetration with a victim was at least 9 years of age but under 13 years of age when the act was committed and the accused used *force or threat of force* to commit the act."  38 ILCS ¶ 12-14(b)(1)(ii) (amended 1995).  Second, Brown's petition refers to the pattern jury instructions for the current version of Illinois' aggravated criminal sexual assault statute, which requires force.  But the relevant statute was amended in 1996, removing subdivision (b)(1), under which Petitioner was charged and convicted.  (Ill. Pattern Jury Instructions for Aggravated Criminal Sexual Assault, Ex. G to Pet.)

### 2.    Dates of the Attacks

Petitioner also contends the indictment was inadequately specific about the dates of the offenses, which are relevant to establish the victim's age at the time of the crimes.  That claim is non-cognizable and meritless.  First, the claim is non-cognizable, because it alleges only a state law error, namely, that the state trial court lacked jurisdiction due to an insufficient indictment.  Further, as Respondent points out, the indictment is not actually lacking, as "the date of the offense is not an essential ingredient in child sex offenses" under Illinois law.  *People v. Cregar*, 172 Ill. App. 3d 807, 821, 526 N.E.2d 1376, 1386 (Ill. App. Ct. 4th Dist. 1988) (citing *People v. Escobedo*, 151 Ill. App. 3d 69, 85, 502 N.E.2d 1263 (Ill. App. Ct. 1st Dist. 1986)).  Accordingly, Brown was properly charged with aggravated criminal sexual assault.  Claim one is dismissed.

### B.    Claim Two

Petitioner also claims that he has suffered a "substantial violation of his constitutional rights" due to the imposition of consecutive sentences.  (Pet. at 48.)  Specifically, Brown argues that his sentence is improper because: (1) the consecutive sentences were imposed only after judicial fact-finding in violation of *Apprendi*; (2) consecutive sentences in this instance violate Illinois law; and (3) the court failed to cite the basis or statutory authority for imposing consecutive terms.  (Pet. at 48-70.)  None of these arguments has merit.  First, consecutive sentences do not violate *Apprendi*.  *See Oregon v. Ice*, 555 U.S. 160, 163-164 (2009) (Sixth Amendment is not violated when the judge makes finding of facts required to impose consecutive sentences).  The latter two arguments are non-cognizable on federal habeas review, as they allege error in the state court's application of state sentencing law.  Moreover, these arguments fail as a matter of state law: consecutive sentences were, in fact, mandatory in this instance.  *See* 38 ILCS ¶ 1005-8-4(a) (1989) ("The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was . . . a violation of [aggravated criminal sexual

12

assault] . . . in which event the court shall enter sentences to run consecutively.") (current version at 730 ILCS § 5/5-8-4(a)).

**C.    Claim Three**

Petitioner's third claim raises several concerns regarding his state habeas proceedings: (1) that the State's motion to dismiss was not timely filed; (2) that the matter was disposed of in his absence; and (3) that the motion to dismiss was granted in error.   (Pet. at 65-70.) Regardless of their merits, these arguments fail for two reasons: first, they are non-cognizable as all three are based on matters of state law.  Second, federal habeas relief is not available for errors occurring in the state post-conviction proceedings, since such errors do not implicate the legality of the petitioner's confinement. *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987); *Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir. 1997).

**D.    Claim Four**

Brown's fourth claim is that count one of the indictment was "defective" and "void" because it failed to properly allege "sexual penetration" as required by the relevant statute, and, as a result, Brown was not given adequate notice of the charges against him.  Specifically, count one charges that Brown committed aggravated criminal sexual assault in that he committed an act of "sexual penetration . . . to wit: contact between [Petitioner]'s penis and [the victim's] vagina."  (Indictment, Count One, Ex. A to St. Ct. R.)  Brown argues that the term "contact" does not satisfy the necessary element of "sexual penetration," and, therefore, the indictment was faulty.  (Pet. at 71.)

Like Petitioner's first claim (discussed above), this argument relies on a misunderstanding of Illinois' criminal code.  Illinois law defines "sexual penetration" as follows:

> "Sexual penetration" means any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration.  Evidence of emission of semen is not required to prove sexual penetration.

38 ILCS ¶ 12-12(f) (1984) (current version at 720 ILCS § 22/103). Under this definition, it is clear that the indictment correctly charged Petitioner with aggravated criminal sexual assault.

## E. Claim Five

Petitioner's fifth claim, like his third (discussed above), attacks his state habeas proceedings. Specifically, Petitioner complains that the state habeas court's dismissal of Brown's petition relied on "false and perjurious information" provided by the State in its motion to dismiss. (Pet. at 74.) This claim, like Petitioner's prior claims related to his state habeas proceedings, cannot give rise to habeas relief, as it does not attack the validity of his confinement.

## F. Claim Six[9]

Petitioner's sixth claim alleges several purported errors related to the grand jury proceedings (Supp. Pet. [46] at 5): (1) that the testimony of Sergeant Lisuzzo regarding counts two and five (both of which were "nolle-prossed" before trial) was false; (2) that the "threat of force" allegations in counts four and six were never presented to the grand jury; and (3) that counts three and six of the indictment charged a criminal sexual act that Petitioner did not commit.

As Respondent points out, habeas relief for errors in grand jury proceedings is exceedingly rare for two reasons, both of which are relevant here: first, there is no federal constitutional right to a grand jury in a state-court prosecution. *See Bae v. Peters*, 950 F.2d 469, 477 (7th Cir. 1991) (citing *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972)). Second, Petitioner's subsequent conviction by a petit jury defeats the argument that he was prejudiced by any error before the grand jury. *See United States v. Tepoel*, 317 Fed. Appx. 549, 550 (7th Cir. 2009*)* ("Given that a jury found [Defendant] guilty beyond a reasonable doubt, it is hard to see how errors in the grand-jury process could matter.") (citing *U.S. v. Mechanik*, 475 U.S. 66,

---

[9] Claims six through ten of Brown's petition are raised in his supplemental petition [46].

70-72 (1986)).   As counts two and five were nolle-prossed prior to trial, Brown could not have been prejudiced by any alleged perjury regarding these counts before the grand jury.   Further, as Petitioner was convicted of counts three, four, and six by a jury, any error before the grand jury as to these counts could not have prejudiced him.

## G.   Claim Seven

In the seventh claim of his habeas filing, Petitioner alleges that his Sixth Amendment rights under *Brady v. Maryland*, 373 U.S. 83 (1963), were violated by the State's proffering of evidence at trial that exceeded the scope of its answers to Petitioner's motion for a bill of particulars.   (Supp. Pet. at 5.)   Brown also raised this concern on direct appeal, and the appellate court rejected it as procedurally defaulted due to Petitioner's failure to support his argument with "relevant record cites and authorities relied upon . . . [in] violation of section (e) of Illinois Supreme Court Rule 341 . . . ."   (Ill. App. Ct. Order at 14.)   A federal habeas court may not review a claim where, as here, it has been rejected by a state court on state law grounds independent of the federal question and adequate to support the judgment.   *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010) (citing *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009)).

The court also notes that Petitioner's claim, even if not defaulted, would fail on its merits. Petitioner does not explain what evidence admitted at trial was not disclosed in the bill of particulars, nor does he show that the State withheld any information (let alone exculpatory information) from him.   Brown does cite, without explanation, to the State's supplemental answer to his request for a bill of particulars, in which the State lists the dates of five separate incidents (rather than the four for which Brown was ultimately tried and convicted).   (Supp. Answer to Discovery, Ex. CLR-19 to St. Ct. R.)   Based on this citation, the court assumes that Petitioner takes issue with the fifth offense listed in the bill of particulars as occurring "[o]n or

about February 15, 1993."[10]  (*Id.*)  Yet, at trial, the State explained that the February date was provided in error based on the victim's erroneous belief that the Martin Luther King, Jr. Holiday is celebrated in February.  (Trial Tr. *People v. Brown*, No. 93 CR 10870,  Ex. FF to St. Ct. R. at E-63-65, F-52-61.)  The State presented no evidence regarding any offense in February 1993. As Petitioner has provided no support whatsoever for his contentions that (1) evidence was admitted at trial outside of the bill of particulars; or that (2) the State withheld exculpatory evidence, this claim is dismissed.

**H.  Claim Eight**

Petitioner's eighth claim alleges numerous errors on the part of the state court trial judge; specifically that she (1) improperly admitted hearsay testimony; (2) "permitted State Prosecutors ascertain convictions upon which the alleged victim claims it did not occurred"; (3) removed lesser-included offenses from the jury's consideration; (4) "allowed the State Prosecutors to Charge, tried and Convict the Defendant on . . . Indictments, which were 'Statutory Unauthorized' under State Law"; (5) "conspired" with the State to deprive Petitioner of a "Fair and Just Jury trial"; and (6) obstructed justice during Petitioner's trial.  (Supp. Pet. at 6-6A.)

**1.  Hearsay Testimony**

The court interprets Petitioner's hearsay concern, as Respondent did, as presenting the same claim raised on direct appeal: namely, that the trial court's admission of testimony from Anderson and Morgan concerning statements made by the victim about the crime were improper under Illinois evidence law.  (Ill. App. Ct. Order at 8.)  Citing *People v. Robinson*, 73 Ill. 2d 192, 199-200, 383 N.E.2d 164, 168 (Ill. 1978), Petitioner argued that the testimony of Anderson and Morgan violated the principle that "hearsay rape complaints admissible under [Illinois'] 'corroborative complaint' exception to the hearsay rule cannot include details regarding the crime or disclose the identity of the assailant."  (Ill. App Ct. Order at 8.)  The appellate court

---

[10]    The court reaches this assumption based on the fact that the fifth offense is the only information in the bill of particulars that is at all inconsistent with the evidence at trial.

determined that to whatever degree Anderson and Morgan's testimony may have gone beyond the proper scope of the exception, their testimony constituted only harmless error. (*Id.* 9.) Although he did not do so here, Petitioner's claim could alternatively be interpreted as a federal constitutional claim under the Confrontation Clause of the Sixth Amendment. Such a claim, however, would be a nonstarter, as the out-of-court declarant in this instance later testified and was subject to cross examination. *Johnson v. Bett*, 349 F.3d 1030, 1037 (7th Cir. 2003) ("Even when presumptively unreliable hearsay is admitted as substantive evidence, there is no violation so long as the declarant testifies as a witness and is subject to cross-examination.") Further, the claim that Brown did raise in state court (i.e., that the trial court erroneously admitted evidence outside the scope of the corroborative complaint exception) is a question of state law that is non-cognizable in federal habeas review.

### 2.     Doanes's Testimony

Petitioner's next claim—that the trial judge "permitted State Prosecutors ascertain convictions upon which the alleged victim claims it did not occurred"—also appears to be one that he raised on direct appeal. The court interprets this claim to be a complaint that the trial court wrongfully admitted unfairly prejudicial testimony from Brown's stepdaughter regarding her allegations, since recanted, that Petitioner had sexually assaulted her. As this claim alleges solely an issue of state evidence law, it is non-cognizable on federal habeas review. *See Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001) ("evidentiary rulings of state trial courts are normally not subject to habeas review . . . to claim a right to relief, a petitioner must establish that the incorrect evidentiary ruling was so prejudicial that it violated his due process right to a fundamentally fair trial, creating the likelihood that an innocent person was convicted") (citing *Thompkins v. Cohen*, 965 F.2d 330, 333 (7th Cir. 1992)).

### 3.     Removal of Lesser Charges from the Jury's Consideration

Petitioner next objects to the State's decision to "nolle-pros" the less serious charges in the indictment at the close of evidence. (Supp. Pet. at 6.) This argument does not allege any

violation of federal law, and is thus non-cognizable on habeas review. The court also notes, however, that the State's decision was authorized by Illinois law, which permits the State to dismiss charges voluntarily at any time so long as the trial court determines the action (1) is not capriciously or vexatiously repetitious, and (2) will not cause substantial prejudice to the defendant, such as the State's attempt to avoid the effect of Illinois' speedy trial provisions. *People v. Gill*, 379 Ill. App. 3d 1000, 1004, 886 N.E.2d 1043, 1047 (Ill. App. 4th Dist. 2008). Neither of those factors is present here, where the State nolle-prossed three aggravated criminal sexual abuse charges at the close of evidence, long after jeopardy had attached.

### 4. "Statutory Unauthorized" Indictment

Petitioner's next argument—that the court erred in permitting the State to convict him on "Statutory Unauthorized" indictments—appears to be a duplicate of the objections to his indictment raised in his initial habeas petition in this court (discussed above). (Supp. Pet. at 6A.) Like those claims, this one challenges his conviction based on issues of state law, and, as such, is non-cognizable on federal habeas review. Further, as discussed above, the indictments here are proper under Illinois law.

### 5. Conspiracy and Obstruction of Justice

Petitioner's final argument in claim eight is that the State, along with the trial judge, conspired to obstruct justice and deny Brown a fair trial. (*Id.*) Based on this bare bones assertion, the court assumes that Petitioner intends to raise the related argument that he developed in his state post-conviction petition. In that filing, Brown alleged that the judge and prosecutors worked together to convict Petitioner in retaliation for his acquittal in a 1989 sexual assault case related to the allegations raised by Doanes, his stepdaughter. (Post-conviction Pet., Ex. HH to St. Ct. R., at 120.)

The reversal of a criminal conviction for judicial bias requires either the actuality of judicial bias, or a temptation so severe that one might presume an actual incentive to be biased. *Del Vecchio v. Ill. Dep't of Corr.*, 31 F.3d 1363, 1379 (7th Cir. 1994). Brown's only support for

this argument is the fact that the original presiding judge was replaced by Judge Carol Kipperman shortly before trial (Post-conviction Pet., Ex. HH to St. Ct. R., at 104), and that Judge Kipperman made rulings on evidentiary issues and jury instructions that were unfavorable to Petitioner. (*Id.* at 122-26, 128.) Nothing about these circumstances, or the rulings cited by Petitioner, gives rise to an inference that Judge Kipperman was actually biased against him. For instance, Petitioner contends that the judge's bias is revealed in her adoption of jury instructions on aggravated criminal sexual assault that do not mention "force" as a required element. As discussed at length above, however, Judge Kipperman's instruction was accurate: force was not an element of the crime charged. Petitioner's assertions come far short of demonstrating judicial bias.

I.      **Claim Nine**

Petitioner's penultimate claim is one of "actual innocence," specifically that the State "failed to produce Proof of his guilt, 'Beyond a Reasonable Doubt,'" and, in fact, "NO PROOF of an alleged offense was proffered at trial." (Supp. Pet. at 6.) Brown also claims that his rights to "obtain witnesses in his favor were violated entirely, before and during the trial proceedings." (*Id.*)

1.      **Sufficiency of the Evidence**

Brown previously raised the argument that he had not been proven guilty beyond a reasonable doubt on direct appeal. (Def.-Appellant's Br., Ex. B to St. Ct. R., at 1-2.) In rejecting Petitioner's claim, the appellate court found that it had not been supported with relevant authority in violation of Illinois Supreme Court rules. (Ill. App. Ct. Order at 15-16.) Petitioner did not re-raise this claim in his PLA. (Pet. for Leave to Appeal, Ex. D to St. Ct. R.) As a result, Petitioner procedurally defaulted this claim twice over: first, the appellate court's decision is an adequate and independent state law ground barring federal habeas review, and second, Brown failed to raise the claim through a complete round of state court review. *Bland v. Hardy*, 672 F.3d 445, 449 (7th Cir. 2012) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999)).

In any event, Petitioner's challenge to the sufficiency of the evidence is unsupported. Habeas relief is only available to Brown if the record contains no evidence from which a rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Monroe v. Davis*, 712 F.3d 1106, 1118 (7th Cir. 2013) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Because Brown was convicted, this court views all of the evidence presented in the light most favorable to the verdict. (*Id.*) Further, as this is a collateral review rather than a direct appeal of Petitioner's conviction, AEDPA provides an extra level of deference: habeas relief is only appropriate if the Illinois Appellate Court applied the *Jackson* standard unreasonably to the facts of Brown's case. 28 U.S.C. § 2254(d)(1); *Monroe*, 712 F.3d at 1119 (citing *Trejo v. Hulick*, 380 F.3d 1031, 1032 (7th Cir. 2004)). While the appellate court rejected Petitioner's sufficiency claim on procedural grounds, it went on to find that Brown's argument failed under the *Jackson* standard, as well. While the appellate court's opinion did not refer to *Jackson* by name, it cites to Illinois case law which establishes an equivalent standard in determining that a reasonable jury could, on this record, have found guilt beyond a reasonable doubt. (Ill. App. Ct. Order at 16 (citing *People v. Schott*, 145 Ill. 2d 188, 202-03, 572 N.E.2d 690, 697 (Ill. 1991)).) As the appellate court properly and reasonably applied the *Jackson* standard, Petitioner's sufficiency argument fails.

### 2. Right to Obtain Witnesses in One's Favor

The court is also unable to identify any support for Petitioner's allegation that he was denied the right to obtain witnesses in his favor. Petitioner's daughter, wife, and stepdaughter all testified in his case in chief. (Ill. App. Ct. Order at 3-4.) Petitioner's ability to present their testimony does not by itself defeat his claim; the Sixth Amendment's Compulsory Process clause (1) requires that the government assist the accused in compelling the attendance of favorable witness, and (2) guarantees the right to put before the jury evidence that might influence its verdict. *Pennsylvania v. Ritchie*, 480 U.S. 39, 55-56 (1987). But to establish a violation, Brown must show (1) that the testimony would have been "both material and

favorable" to his defense, and (2) that the exclusion was "arbitrary" or "disproportionate" to the evidentiary purpose advanced by the exclusion. *Harris v. Thompson*, 698 F.3d 609, 627 (7th Cir. 2012) (citing *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)). Petitioner has failed to make either showing, as he has not identified a single witness whose testimony he was denied the opportunity to present.

**J.    Claim Ten**

Brown's final claim is one of ineffective assistance of counsel. Specifically, Petitioner alleges that his trial counsel was ineffective "based upon all the alleged claims presented herein this petition." (Supp. Pet. at 6A.) The familiar two-part test for ineffective assistance of counsel comes from *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, Petitioner must show that (1) his counsel's performance fell below "an objective standard of reasonableness," and (2) his counsel committed errors "so serious that counsel was not functioning as the 'counsel' guaranteed [Brown] by the Sixth Amendment." *Id.* at 687. To satisfy the second prong, Petitioner must prove that his attorney's constitutionally deficient performance (if any) prejudiced him, i.e., that counsel's "errors were so serious as to deprive [Brown] of a fair trial, a trial whose result is reliable." *Id.* at 687. This means that Brown "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Further, because the second prong is tied to the right to counsel under the Sixth Amendment, where there is no right to counsel (e.g., in state post-conviction proceedings), there can be no constitutionally ineffective assistance of counsel. *Wyatt v. United States*, 574 F.3d 455, 459 (7th Cir. 2009) (citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)).

Because Petitioner has not elaborated as to how his trial counsel represented him ineffectively, the court interprets this claim as derivative of claims one through nine above. That is, Brown appears to contend that counsel was ineffective for failing to challenge, at trial, the

errors identified in this petition. Each of the nine claims discussed above, however, are meritless (claims one, two, four, six, seven, eight, and nine) or involve proceedings in which he had no constitutional right to counsel (claims three and five). By definition, Brown's meritless claims would not have altered the outcome of his prior proceedings, and there can be no constitutionally ineffective assistance of counsel in those proceedings where counsel is not constitutionally guaranteed. As described earlier, the state courts may at some point conduct a hearing on Brown's ineffective assistance claims. Without prejudice to any determinations that might be made after such a hearing, this court concludes on the record before it that Petitioner has not presented support for such a claim.

## IV.    Certificate of Appealability

The court also declines to issue a certificate of appealability. A "certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(B)(2); *see also Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003) (detailing requirements for issuance of a certificate of appealability). As this case presents only applications of state law, meritless claims, and otherwise raises no substantive constitutional issues, Petitioner has failed to do so here.

## CONCLUSION

For the foregoing reasons, Petitioner's habeas corpus petition [1] and supplemental habeas corpus petition [46] are both denied in their entirety. The court further declines to issue a certificate of appealability.

ENTER:

Dated:  November 27, 2013

_____
REBECCA R. PALLMEYER
UNITED STATES DISTRICT JUDGE

22